OPINION OF THE COURT
ALDISERT, Circuit Judge.
Appellant David Connolly appeals from an order of the District Court for the District of New Jersey imposing a sentence of 100 months’ imprisonment after a jury found him guilty of being a felon in possession of a firearm. Connolly contends that the District Court’s refusal to suppress evidence of a firearm in Connolly’s possession was reversible error because the investigating officers did not possess the requisite reasonable suspicion to justify a Terry frisk. He further contends that the District Court committed reversible error in denying Connolly a downward adjustment in offense level under United States Sentencing Guidelines § 3E1.1 for acceptance of responsibility. *756 We reject both contentions and affirm the judgment of the District Court.[1]
I.
Because we write only for the parties we will discuss only the relevant legal precepts and only those facts relating thereto.
On May 1, 2007, Detectives Hector Rodriguez (“Detective Rodriguez”) and Gerardo Rodriguez were patrolling an area of Newark, New Jersey that had been recently plagued by purse-snatchings. The detectives became suspicious after observing Connolly attempt to speak to two women who appeared inhospitable to his advances. The detectives believed, based on their collective experience, that this was behavior characteristic of purse-snatching. Detective Rodriguez subsequently approached Connolly and identified himself as a police officer. Connolly appeared visibly nervous to Detective Rodriguez and almost immediately placed his hands in his pockets. The detective asked Connolly to remove his hands from his pockets and when Connolly did not comply, the detective ordered him to do so. When Connolly again failed to comply, Detective Rodriguez performed a frisk, which produced a fully loaded .38-caliber handgun concealed in Connolly’s waistband. On July 9, 2007, a grand jury returned an indictment charging Connolly with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).
After pleading not guilty, Connolly filed a motion to suppress on October 24, 2007. The District Court held a hearing at which both arresting officers were examined at length. Detective Rodriguez testified that “[ajfter he refused a second time, now I felt that I needed to pat him down because there’s a reason why he’s not removing his hands from his pockets, so I approached him.” (App.31.) The Court ultimately denied the motion in February 2008. Connolly’s two-day trial commenced on March 11, 2008 and a jury found him guilty of being a felon in possession of a handgun on March 12, 2008. The District Court sentenced Connolly to 100 months’ imprisonment with three years’ supervised release, denying him a downward adjustment for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1. Connolly filed a timely notice of appeal on July 28, 2008.
II.
In considering a motion to suppress, we review the District Court’s factual findings for clear error, and we exercise plenary review over its application of the law to those facts. United States v. Mathurin, 561 F.3d 170, 173 (3d Cir.2009).
Police may make a brief investigatory stop for reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such a detained person may be frisked for weapons if the police have a reasonable belief that the person is armed and dangerous. Id. at 27, 88 S.Ct. 1868. We must first inquire whether the detectives had the “minimal level of objective justification” for a Terry stop. United States v. Sokolow, 490 U.S. 1, 2, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). This requires “something more than an inchoate and unpartic-ularized suspicion.” Id. Police officers may “draw on their own experience and specialized training to make inferences from and deductions about the cumulative information,” but must act on more than “a mere ‘hunch’ ” to meet the requirements of reasonable suspicion. United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting Terry, 392 U.S. at 27, 88 S.Ct. 1868). We have observed that the test is one of “reasonable *757 ness given the totality of circumstances,” which can include location, history of crime in the area, a suspect’s nervous behavior and evasiveness and police officers’ “common sense judgments and inferences about behavior.” Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir.2003) (quoting Illinois v. Wardlow, 528 U.S. 119, 124-125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). In reviewing a subsequent Terry frisk for reasonable suspicion, “the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.” Terry, 392 U.S. at 27, 88 S.Ct. 1868.
Connolly contends that the initial stop was impermissible because the detectives were unable to articulate a chain of inferences that led logically to their belief that Connolly was engaging in criminal activity. To the contrary, the officers were on patrol in an area that had been the site of recent purse-snatchings. They observed Connolly approach not one, but two women, who apparently rebuffed his advances. In the officers’ experience, this behavior was consistent with the preliminary stages of purse-snatching. Under the totality of the circumstances, the initial Terry stop was permissible.
Connolly next contends that the District Court erred in admitting the handgun found during the Terry frisk because the officers did not possess a reasonable and particularized suspicion that he was armed and dangerous. We disagree, on our reading of the record, the District Court properly concluded that the detectives had a sufficiently particularized and objective suspicion that Connolly might be armed and dangerous. When approached, Connolly appeared nervous and evasive. After Detective Rodriguez identified himself as a police officer, Connolly immediately placed his hands in his pockets and refused both a request and a direct order to remove them. We conclude that from this sequence of events, the attendant circumstances, and their combined 30 years of experience, the police officers could reasonably suspect that Connolly might be armed and dangerous. Under the totality of the circumstances, the Terry frisk was permissible. The District Court did not err in denying Connolly’s motion to suppress the handgun.
III.
This Court reviews for clear error the factual findings underlying a sentencing court’s denial of a Sentencing Guidelines reduction for acceptance of responsibility. United States v. Lessner, 498 F.3d 185, 199 (3d Cir.2007). We reverse only if we are “left with a definite and firm conviction that a mistake has been committed.” Id. “The sentencing judge is in a unique position to evaluate a defendant’s acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.” U.S. Sentencing Guidelines § 3E1.1 cmt. n. 5.
Section 3E1.1(a) of the Guidelines provides that a sentencing court may grant a two-level reduction in offense level if the defendant has clearly demonstrated acceptance of responsibility. The reduction contemplates a defendant “truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is aecountable[.]” U.S. Sentencing Guidelines § 3E1.1 cmt. n. 1(a); see Lessner, 498 F.3d at 199. Although this downward adjustment does not generally apply to defendants who go to trial, the Guidelines expressly recognize exceptions to this general rule, such as when defendants go to trial to preserve constitutional issues.[2]
*758 Connolly contends that because the government did not permit him to take a conditional plea, he was forced to go to trial to preserve his Fourth Amendment objection. Additionally, he argues that he made no pretrial statements denying possession of the gun and that this militates in favor of a finding of acceptance of responsibility. The District Court found that Connolly did not demonstrate acceptance of responsibility because: Connolly did not waive his right to a jury; he subpoenaed witnesses lacking knowledge of relevant events; he refused to stipulate to certain non-controversial elements of the crime; and he vigorously attacked the credibility of the testifying officers, even suggesting that their testimony was false. The District Court assessed the “totality of the situation” and determined that Connolly did not accept responsibility. United States v. McDowell, 888 F.2d 285, 293 n. 2 (3d Cir.1989). The District Court is in the unique position to best gauge the defendant’s acceptance of responsibility or lack thereof and as such we accord great deference. We cannot say that the record before us leaves us with “a definite and firm conviction that a mistake has been committed.” Lessner, 498 F.3d at 199.
* * * * * *
We have considered all the contentions presented by the appellant and conclude that no further discussion is necessary.
The judgment of the District Court will be affirmed.

. The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a)(1) and 28 U.S.C. § 1291.

. The Sentencing Guidelines provide:
This adjustment is not intended to apply *758 to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.
U.S. Sentencing Guidelines § 3E1.1 cmt. n. 2.